# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

F.B., a minor, by Suzanne Galbato, Esq., as guardian ad litem,

           Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

5:15-cv-00148 (BKS/CFH)

---

**Appearances:**

Steven R. Dolson
The Law Offices of Steven R. Dolson, PLLC
126 N. Salina Street, Suite 3B
Syracuse, NY 13202
*For Plaintiff*

Grant C. Jaquith, United States Attorney
Joshua L. Kershner, Special Assistant United States Attorney
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278
*For Defendant*

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I. BACKGROUND**

  Rochelle Brooks, acting pro se, filed this action on behalf of her daughter F.B. under 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's denial of her

application for Supplemental Security Income ("SSI") Benefits for F.B.[1] (Dkt. No. 1). The Commissioner filed a motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the Complaint must be dismissed as untimely. (Dkt. No. 11). In opposition, Plaintiff presented evidence that Ms. Brooks had been diligent in pursuing this action, but that extraordinary circumstances—a move from one residence deemed uninhabitable to another that was also deemed uninhabitable, in addition to an undiagnosed brain tumor that interfered with her ability to function—prevented her from filing this action within the 60-day time period. (Dkt. No. 57). The Court therefore denied the Commissioner's motion on the ground that equitable tolling might justify the untimely filing. (*Id.*). On October 19, 2010, the Court held an evidentiary hearing at which Ms. Brooks testified and both parties presented documentary evidence. (*See* Transcript of October 19, 2010 Evidentiary Hearing ("T.")). Having considered the evidence and Ms. Brooks' testimony, which the Court finds credible, the Court finds that equitable tolling applies and deems the Complaint timely filed.[2]

## II.    FACTS

### A.    60-Day Period for Filing Complaint

On December 5, 2014, the Appeals Council sent Ms. Brooks a letter notifying her that it had denied her request for review of the Administrative Law Judge's decision denying F.B.'s claim for SSI benefits. (Dkt. No. 11-3, at 2). The letter explained: "If you disagree with our action, you may ask for court review of the Administrative Law Judge's decision by filing a civil

---

[1] Following the filing of this action, the Court ordered that pro bono counsel be appointed to represent F.B. in this matter. (*See* Dkt. Nos. 30, 31, 49, 50, 52). On June 21, 2018, the Court appointed Ms. Galbato as guardian ad litem. (Dkt. No. 64).

[2] "It is within the ambit of the court to resolve questions of equity, including the applicability of equitable tolling to statutes of limitations, when such factual questions are separate from the merits of the case." *Lama v. Malik*, 192 F. Supp. 3d 313, 315 n.2 (E.D.N.Y. 2016) (citing *Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 446–447 (S.D.N.Y. 2012)). In doing so, it is within the province of the district court to resolve issues of credibility. *See Sinha v. N.Y.C. Dep't of Educ.*, 127 F. App'x 546, 547 n.1 (2d Cir. 2005) (noting that the "district court properly resolved the credibility dispute between the two witnesses" in determining an equitable tolling claim).

action" in United States District Court. (*Id.* at 3). The letter informed Ms. Brooks that she had "60 days," starting "the day after you receive this letter," which is assumed to be "5 days after the date" on the letter (December 5, 2014), to file a civil action. (*Id.*). The letter also explained that "[i]f you cannot file for court review within 60 days, you may ask the Appeals Council to extend your time to file." (*Id.*). Although Ms. Brooks could not recall when she received the Appeals Council letter, she does not dispute receiving it.[3] (T. 4, 27). The parties agree that "[u]nder ordinary circumstances the request for judicial review of a notice from the Appeal [sic] Council dated December 5, 2014 would have to be filed with the Court by February 9, 2015." (Dkt. No. 73, ¶ 7). Thus, the Complaint, which was filed on February 10, 2015, was filed one day late.

**B.    Housing Difficulties, Health Issues, and Pursuit of Benefits**

On December 5, 2014, the day the Appeals Council issued the denial letter, the City of Syracuse found Ms. Brooks' residence in Syracuse, New York, did not have adequate heat. (Dkt. No. 70-1, at 2). Ms. Brooks spent half that day in a homeless shelter with her children and then returned to her residence. (Dkt. No. 70-2, at 3, 17). On December 8, 2014, Ms. Brooks received a notice from the City stating that her residence had been "declared unfit for human habitation" and directing her "to begin planning to vacate the premises immediately." (Dkt. No. 70-1, at 1).

Sometime between December 17 and 19, 2014, Ms. Brooks moved to another residence in Syracuse. (*Id.* at 18). Although the residence passed inspection on December 26, 2014, (*id.* at

---

[3] As F.B. presents no affirmative evidence showing that Ms. Brooks received the Appeals Council notice more than five days after issuance, the Court presumes it was received on December 10, 2014. *See Liranzo v. Astrue*, No. 07-CV-5074, 2010 WL 626791, at *2 (E.D.N.Y. Feb. 23, 2010) ("[A] plaintiff must present some affirmative evidence indicating that the actual receipt occurred more than five days after issuance" (quoting *Guinyard v. Apfel*, 2000 WL 297165, at *4 (S.D.N.Y. Mar. 22, 2000)). The Complaint, therefore, had to be filed within 60 days—by February 9, 2015.

3

14), on January 7, 2015, Ms. Brooks and her two daughters suffered carbon monoxide poisoning, (Dkt. No. 72-1, at 70).

Ms. Brooks testified that during the time period after her receipt of the Appeals Council letter, she contacted the Legal Aid Society and at least one other attorney to try to obtain help with Social Security filings for her daughter, but was unsuccessful. (*See, e.g.*, Dkt. No. 70-3, at 1 (January 8, 2015 letter from legal aid society declining to represent Ms. Brooks in connection with her "daughter's SSI case")).

On January 9, 2015, Plaintiff spoke with an employee at the Social Security office about her daughter's eligibility for SSI benefits. (Dkt. No. 70-4, at 1). The same day, the Social Security office scheduled a January 23, 2015 telephone appointment with Ms. Brooks. (*Id.* at 3). On January 23, 2015, Ms. Brooks applied for SSI benefits on F.B.'s behalf via telephone. (Dkt. No. 70-4, at 2). Ms. Brooks testified that it was "during that time my house was messing up and I was trying to call [Social Security], and if I lost the piece of papers because I was moving back and forth, I would call in to get the information, they would read it off to me" or send forms to her in the mail. (T. 29). Ms. Brooks stated that she would try to return the forms as promptly as she could.[4] (*Id.*). Ms. Brooks testified that during her telephone conversations with Social Security employees, "several" Social Security employees told her "to sue." (T. 9). Ms. Brooks stated that after learning it was "possible" to sue Social Security, she went "into the office and they gave [her] the form to do it." (*Id.*).

---

[4] The evidence supports Ms. Brooks' statement. For example, on January 27, 2015, Ms. Brooks received a letter regarding her application for SSI benefits on F.B.'s behalf and a request that she complete a questionnaire about F.B. (Dkt. No. 72-1, at 26). On or about January 30, 2015, Ms. Brooks completed and mailed back the form. (*Id.* at 29; T. 30). The Commissioner has argued that this form concerned a second application for SSI benefits, but the Court credits Ms. Brooks' testimony that she did not know if the form related to a second application she had submitted on behalf of F.B., or review of the denial at issue in this case.

4

On February 9, 2015, a complaint was opened with the City regarding a bed bug infestation at Ms. Brooks' residence. (Dkt. No. 72-1, at 70; Dkt. No. 70-1, at 16). On February 10, 2015, the City found the residence to be in violation of various state and city codes due to a bed bug infestation and ordered professional extermination. (Dkt. No. 70-1, at 15). Ms. Brooks testified that in addition to having housing problems, she was experiencing breathing issues, fainting, and having difficulty moving. (T. 10–11). Ms. Brooks testified that she had experienced these symptoms for some time, but that it was not until October or November 2015 that a brain tumor was discovered. (Dkt. No. 70-2, at 1). In November 2015, Ms. Brooks underwent surgery and the tumor was removed. (Dkt. No. 70-2).

Ms. Brooks testified that she filed the Complaint on February 10, 2015 because her neighbor was able to give her a ride that day; she stated that was unable to walk to the courthouse because she "was passing out." (T. 31). Ms. Brooks stated that at the time she filed the Complaint, she did not know it was late. (T. 31).

## III. DISCUSSION

"The sixty-day time limit is not jurisdictional, but rather a statute of limitations." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-cv-4724, 2015 WL 1439862, at *2, 2015 U.S. Dist. LEXIS 39921, at *6 (E.D.N.Y. Mar. 27, 2015) (citing *Bowen v. City of New York*, 476 U.S. 467, 478 (1986)). The limitations period, however, is "a condition on the waiver of sovereign immunity and thus must be strictly construed." *Bowen*, 476 U.S. at 479. "Statute of limitations defenses are affirmative defenses, which normally cannot be decided on a motion to dismiss." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009). "However, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Id*. (internal quotation

marks omitted). As a statute of limitations, the 60-day time period is subject to equitable tolling. *Bowen*, 476 U.S. at 480–82.

"[T]he doctrine of equitable tolling permits courts to deem filings timely where a litigant can show that '[s]he has been pursuing h[er] rights diligently' and that 'some extraordinary circumstance stood in h[er] way.'" *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A plaintiff must demonstrate a "causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of [the] filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). While generally equitable tolling is warranted only in "rare and exceptional circumstances," *Molnar v. Legal Sea Foods, Inc.*, 473 F. Supp. 2d 428, 430 (S.D.N.Y. 2007), because "Congress intended [the Act] to be 'unusually protective' of claimants," "[e]quitable tolling . . . is not infrequently appropriate" in Social Security cases. *New York v. Sullivan*, 906 F.2d 910, 917 (2d Cir. 1980) (quoting *Bowen*, 476 U.S. at 480). "The burden of demonstrating the appropriateness of equitable tolling, however, lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

The Court finds that Ms. Brooks pursued F.B.'s rights diligently. In the absence of evidence suggesting otherwise, the Court assumes Ms. Brooks received the Appeals Council decision on December 10, 2014, and that the 60-day period for filing an action expired on February 9, 2015. There is evidence that during this time period she was contacting local attorneys to request help in obtaining SSI benefits for F.B. (Dkt. No. 70-3, at 1). Ms. Brooks also contacted Social Security via telephone on January 9 and 23, 2015, regarding SSI benefits for F.B. (Dkt. No. 70-4, at 1–2). Employees in the Social Security office told Ms. Brooks she could "sue" the Commissioner concerning SSI benefits for F.B. and provided the form necessary to

6

begin an action as well as assistance beginning a new application for SSI benefits on F.B.'s behalf. (T. 9).

The credible evidence also shows that extraordinary circumstances prevented Ms. Brooks from timely filing this action. She not only had a serious health issue—she was suffering from an undiagnosed brain tumor that caused her to faint and to have difficulty breathing and moving[5]—but also moved from one intolerable living situation to another.

At the hearing, the Commissioner argued that these circumstances do not justify the "truly extraordinary remedy" of equitable tolling and is not a case where a person had been "truly diligently pursuing their rights" but was thwarted from timely filing by "something extraordinary." (T. 39–40). The Court disagrees. There were ongoing extraordinarily difficult circumstances that interfered with Ms. Brooks' ability to file the Complaint. During the 60-day time period for filing, Ms. Brooks lived in a residence with inadequate heat that was ultimately "declared unfit for human habitation" and moved to a second residence where she and her two daughters suffered carbon monoxide poisoning and a bed bug infestation, all while she was having difficulty breathing, fainting, and having trouble with mobility due to an undiagnosed brain tumor. *See Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) ("Equitable tolling is generally considered appropriate . . . where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion."). In the midst of this, Ms. Brooks attempted to procure legal assistance and was in contact with, and attempted to follow the instructions of, Social Security employees concerning her pursuit of benefits for F.B.

---

[5] The Commissioner argues that this testimony is not credible because the November 2015 medical records (Dkt. No. 70-2, at 5) indicate that Plaintiff had been experiencing these symptoms for three months and that she was not therefore suffering them in February 2015, around the time she filed the Complaint. The Court, however, credits Plaintiff's testimony that she had been experiencing symptoms for a long period of time and had difficulty persuading doctors of the seriousness of her condition. She explained that in 2005 she had a form of lung cancer that "spreads . . . cancer everywhere" and eventually "went to her . . . head." (T. 10).

7

Moreover, Ms. Brooks testified that she endeavored to act promptly in response to their instructions. Finally, unable to walk to the courthouse to file the Complaint because of her medical condition, she had to wait until a neighbor was available to drive her. (*See* T. 31 (explaining she could not "walk [to the courthouse] because [she] was passing out" and had to make an appointment with a neighbor for a ride)).

The Court is mindful that equitable tolling has been applied sparingly, even in Social Security cases. *See, e.g., Kesoglides*, 2015 WL 1439862, at *4, 2015 U.S. Dist. LEXIS 39921, at *12 (finding the plaintiff's assertions regarding "an unspecified illness and the loss of an apartment," which left him confused and disoriented, to be insufficient to justify equitable tolling where there was no indication how "this condition . . . affected his ability to pursue his rights"); *Twumwaa v. Colvin*, No. 13-cv-5858, 2014 WL 1928381, at *4, 2014 U.S. Dist. LEXIS 66419, at *12–13 (S.D.N.Y. May 14, 2014) (finding the pro se plaintiff's allegations that she was "stressed" and "in pain" and relied on her attorney "to respond" to be insufficient to "invoke the doctrine of equitable tolling" where complaint was filed seven days after 60-day deadline). But under the specific circumstances present in this case, the Court finds equitable tolling by one day is appropriate. *See Dillon v. Conway*, 642 F.3d 358, 364 (2d Cir. 2011) (explaining that, when considering equitable tolling, courts must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case" (quoting *Holland v. Florida*, 560 U.S. 631, 650 (2010))). Accordingly, the Court deems the Complaint timely filed.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that the equitable tolling applies and the Complaint (Dkt. No. 1) is deemed timely filed; and it is further

**ORDERED** that an answer and the parties' briefs be filed in accordance with General Order #18 (Dkt. No. 3). In accord with General Order #18, the Defendant's answer together with a certified copy of the transcript of the administrative proceeding is due within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: November 2, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge